IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BCFR PARTNERS, LTD PARTNERSHIP,

    Plaintiff,

v.              CIVIL ACTION NO. 3:15-6441

LARRY T. COPE,
ROBERT FRANKOVICH,
JAMES A. BRADBURY,
PAUL LAMBERT,
THEODORE ROZSA,
STASIS, INC., a Delaware corporation,
JUDY BRADBURY, and
SUZANNE COPE, TRUSTEE of The Cope
Family Irrevocable Trust,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff BCFR Partners, Ltd. Partnership's ("BCFR Partners") motion for summary judgment on Count I of the Complaint against Defendant Paul Lambert. ECF No. 34. For the reasons and to the extent below, the Court GRANTS Plaintiff's motion.

### I. Background

This action was originally brought by Branch Banking and Trust Co. ("BB&T"), a North Carolina banking corporation, against Defendants based on a promissory note in default guaranteed by Defendants Larry Cope, Robert Frankovich, James Bradburry, Theodore Rozsa and Paul Lambert. The note at issue in this litigation, originated on April 12, 2010, obligated Defendant Stasis, Inc. ("Stasis"), doing business as Competition Engineering Services, Inc., to pay BB&T the principal sum of $500,000. Promissory Note, Ex. A, ECF No. 34–2 [hereinafter Note]. The note

was modified several times after April 12, 2010, evidenced by note modification agreements dated April 6, 2011, October 3, 2011, April 8, 2013, and June 14, 2013. Note Modification Agreement, Ex. B, ECF No. 34–3 [hereinafter Note Modification Agreements].

To ensure repayment of the note, Defendants James Bradbury, Larry Cope, Robert Frankovich, Theodore Rozsa, and Paul Lambert executed unconditional personal guaranties for the benefit of BB&T. *See* Compl. ¶¶ 17–21. Lambert first guaranteed payment of the note on April 12, 2010. Guarantee Agreement, Ex. C, ECF No. 34–4 [hereinafter Lambert Guarantee Agreement]. In addition, Lambert executed similar guaranty agreements on April 6, 2011 and June 14, 2013, in which he unconditionally guaranteed all debts owed to BB&T by Stasis. Bradbury Aff. ¶ 5. In connection with the note and modification agreements dated April 6, 2011 and June 14, 2013, Stasis executed loan agreements, which Lambert signed as guarantor of the note.[1] Loan Agreement, Ex. D, ECF Nos. 34–5, 34–6 [hereinafter Loan Agreements].

On April 30, 2015, BB&T notified Defendants that the note was in default. Letter from BB&T to Defendants (April 30, 2015), ECF No. 34–7. Upon learning of the default, Defendants conducted a conference call to discuss how they should respond to BB&T's demand letter. During this call, Defendants Larry Cope, James Bradburry, Robert Frankovich, and Theodore Rozsa expressed a willingness to pay a pro rata portion of the amount necessary to satisfy Stasis's debt to BB&T.[2] Lambert, however, would not agree to pay a pro rata portion.[3] Bradbury Aff. ¶ 8. After Defendants' conference call, Defendants Larry Cope, James Bradburry, Robert Frankovich, and Theodore Rozsa formed BCFR Partners.

---

[1] The Loan Agreements, dated April 12, 2010, April 6, 2011, and June 14, 2013 (collectively, the "Loan Agreements"), provide additional terms and conditions that pertain to Stasis's loan.
[2] Stasis is out of business, and has no remaining assets. Bradbury Aff. ¶ 12.
[3] According to Lambert, his pro rata share is $101,406.32.

On May 19, 2015, BB&T filed this action against Defendants. After filing this suit, BB&T sold the defaulted note to BCFR Partners. As a result, BCFR Partners now holds all right, title, and interest in the loan which is the subject of this litigation.[4] Bradbury Aff. ¶¶ 9-11. For this reason, BB&T and the BCFR Partners filed a joint motion for substitution of BCFR Partners as party plaintiff, and the Court granted their motion on August 11, 2015. ECF No. 22.

Now Plaintiff BCFR Partners asks for summary judgment in its favor on all claims in Count I against Defendant Lambert. ECF No. 34. Count I alleges that Defendants Larry Cope, Robert Frankovich, James Bradbury, Theodore Rozsa, Stasis, and Paul Lambert are liable to BCFR, jointly and severally, for the indebtedness evidence by the defaulted note, Compl. ¶ 24, ECF No 1, and that BCFR is also entitled to recover from Defendants its expenses of collection, including attorney's fees, *id.* ¶ 25. In its motion for summary judgment, BCFR Partners contends there is no genuine issue of material fact over whether Defendant Lambert is liable to BCFR Partners as a guarantor of the defaulted note, and therefore, BCFR Partners is entitled to judgment as a matter of law that Defendant Lambert is liable to BCFR Partners as to the claims in Count I.

## II.     Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in

---

[4] Although BCFR Partners brings a claim against Defendants James Bradbury, Larry Cope, Frankovich and Rozsa, BCFR Partners also owes money to these Defendants for its initial capitalization. Thus, Defendants James Bradbury, Larry Cope, Frankovich and Rozsa assert they have a right to offset their pro-rata share of liability in this case by the amount BCFR Partners owes them.

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23-2- (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III.  Discussion

In its motion for summary judgment, Plaintiff BCFR Partners notes the relationship between a lender and guarantor is contractual, and on this basis, argues Defendant Lambert, by not agreeing to pay a pro rata share of the debt Stasis owes to BCFR Partners, has breached his duty as guarantor to pay the amount due on the note. The Court agrees.

Under West Virginia common law, "an absolute guaranty is an unconditional promise of payment or performance of the contract on default of the principal debtor or obligor." Syl. Pt. 1, *Gregorire v. Lowndes Bank*, 342 S.E.2d 264 (W. Va. 1986) (per curiam) (citing Syl. Pt. 3, *Esso Standard Oil Co. v. Kelly*, 112 S.E. 2d 461 (W. Va. 1960)); *see also HSBC Bank USA v. Resh*, No.12-00668, 2016 WL 525829, at *3 (S.D.W. Va. Feb. 8, 2016) (quoting and citing Syl Pt. 1, *Gregorire*, 342 S.E.2d at 264). "[A] guaranty is deemed to be absolute unless its terms import some condition precedent to the liability of the guarantor." *Esso Standard Oil*, 112 S.E.2d at 465.

In this case, there is no genuine issue of material fact over whether Defendant Lambert is liable to BCFR Partners as a guarantor on the defaulted note. The note states that "failure to pay

any part of the principal or interest when due . . . to the [BCFR Partners] by any one or more of the undersigned . . . or by any guarantor or surety of this Note . . . shall be a material default hereunder and this [n]ote and other debts due the [BCFR Partners] by any one or more of undersigned shall immediately become due and payable without notice, at the option of the Bank." Note at 2. The note further provides that, "upon default, [BCFR Partners] may pursue its full legal remedies at law or equity, and the balance due . . . may be charged against any obligation of the [BCFR Partners] to any party including any Obligor." *Id.* After Stasis defaulted, BB&T demanded payment of the outstanding balances from Stasis and Defendants who guaranteed Stasis's loan, including Lambert. Unlike the other Defendant-guarantors, Lambert refused to pay the sums due under the note and guaranty agreements. According to his guaranty agreement, Lambert "jointly and severally . . . absolutely and unconditionally guarante[ed] to [BB&T] and its successors and assigns[, i.e., BCFR Partners,] the due and punctual payment of any and all notes, drafts, debts, obligations and liabilities, primary or secondary, . . . of [Stasis], at any time, now and hereafter, . . . together with interest, as and when the same become due and payable . . . , including all renewals, extensions, and modifications thereof." Lambert Guarantee Agreement at 1. Based on the guarantee agreement's language, BCFR Partners is entitled to judgment as a matter of law that Defendant Lambert is liable as a guarantor to BCFR Partners for the debt Stasis owes under the note.

Defendant Lambert's arguments responding to BCFR's motion for summary judgment do not create a genuine issue of material fact on Lambert's liability as a guarantor. In his response, Lambert recounts a tale of woeful events that happened to him after he guaranteed Stasis's note and modifications of that note.[5] But none of these things, if true, alter the Court's conclusion that

---

[5] Defendant Lambert complains that he was forced out as president and CEO of Stasis by the

summary judgment is appropriate on the issue of Defendant Lambert's liability with regard to Count I. Lambert argues an assurance given by Defendant Rozsa when Lambert executed a June 14, 2013 loan modification agreement creates a genuine issue of material fact precluding summary judgment. But if anything, this would provide the basis for Lambert to argue he is entitled to have that particular loan modification rescinded for fraudulent inducement, a claim he does not go so far as to make. Furthermore, Rozsa did not represent in his e-mail that if Lambert signed the June 14, 2013 loan modification, then Lambert's personal guaranty would be extinguished; instead, he represented to Lambert that, by pursuing the loan modification, Rozsa was *seeking* an arrangement where Stasis would give BB&T a security interest in Stasis's own assets, *allowing* release of the personal guarantees of Lambert and others. *See* E-mails between Def. Rozsa and Def. Lambert, Ex. 2, ECF No. 37–1 (emphasis supplied). Moreover, Lambert's guaranty agreement dated April 12, 2010 states that the guaranty survives all subsequent modifications of the note. *See* Lambert Guaranty Agreement at 1. Thus, not only does Lambert mischaracterize Rozsa's representation to him, but even if Rozsa did misrepresent the effect of the June 14, 2013 modification, Lambert remains liable as guarantor based on the April 12, 2010 guaranty agreement's plain language regarding subsequent modifications.

---

BCFR Partners, after which he continued to consult for Stasis on raising capital contributions. Def. Lambert's Resp. 2–4, ECF No. 37. After his ouster, Defendant Lambert signed a June 14, 2013 loan modification agreement based on Defendant Rozsa's oral assurance that the BB&T line of credit would be renegotiated, which Defendant Lambert took to mean he would not be exposed to "any further liability." Def. Lambert's Resp. at 3. Defendant Lambert was not under a duty to sign the June 14, 2013 loan modification, but he did so allegedly based on Rozsa's assurance. Defendant Lambert also alleges, without any factual support, that in the years following the modification, Defendants Rozsa and James Bradburry engaged in "self-dealing" by transferring assets of Stasis to James Bradburry without shareholder approval. This in turn left Stasis without means to satisfy its debt to BB&T. As a result, Stasis defaulted on the note, among other debts, including debt to its shareholders, who included Lambert.

Second, Defendant Lambert claims a genuine issue exists over whether he is entitled to an "equitable offset" based on the conduct of BCFR Partners, who Lambert alleges—without factual support—engaged in self-dealing. [A] guarantor has the right to assert defenses, not affirmative recoupment, against payment of the guaranty." *Resh*, 2016 WL 525829, at *3 (relying on *Gregorire*, 342 S.E.2d at 268). An example of a defense guarantors may plead is discharge, which a guarantor is entitled to when the guarantee-obligor, here Stasis, breaches the contract of guaranty in a manner that increases the guarantor's risk or otherwise injures the guarantor's rights. *Id.* Here, Defendant Lambert has not asked for discharge, and he has not provided factual support indicating he would be entitled to discharge. Stasis's assets were not collateral under the loans that Defendant Lambert guaranteed; so improper dealing with Stasis's assets will not discharge Defendant Lambert. Even if Defendant Lambert were entitled to an offset—not to say that he has provided convincing argument or sufficient support showing he is—entitlement to an offset will not discharge his duty as guarantor. Furthermore, to the extent self-dealing of these BCFR Partners is even relevant to the issue of Defendant Lambert's liability as guarantor, the offset allegation amounts to a mere scintilla of evidence.[6]

To conclude, the Court applies West Virginia common law and finds that Defendant Lambert is liable as a guarantor for the entire debt—principal, interest, and collection costs—Stasis owes under the note owned by BCFR Partners.[7]

---

[6] The only factual support Defendant Lambert provides for his equitable offset theory is a single paragraph in his own affidavit attached to his response to Plaintiff BCFR Partners' motion for summary judgment. The bare, conclusory allegations in Defendant Lambert's affidavit are insufficient evidence of self-dealing to support a discharge defense.

[7] BCFR Partners also contends the April 12, 2010 guaranty agreement makes Defendant Lambert responsible for reasonable attorney's fees. Pl.'s Memo. in Supp. 7, ECF No. 35. To support this, BCFR Partners points to the guaranty agreement's provision stating the guarantor "shall be responsible for and shall reimburse [BCFR Partners] for all costs and expenses (including reasonable attorneys' fees, if permitted by law) incurred by [BCFR Partners] in connection with

## IV. Conclusion

For the reasons and to the extent above, the Court **GRANTS** Plaintiff's motion for summary judgment on Count I against Defendant Lambert. The Court **DIRECTS** the Clerk to forward copies of this Written Opinion and Order to all counsel of record, and any unrepresented parties.

ENTER: April 13, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE

---

the enforcement of this Guaranty or the protection or preservation of any right or claim of [BCFR Partners] in connection herewith, including without limitation costs and expenses incurred by [BCFR Partners] in connection with its attempts to collect the indebtedness, obligations, and liabilities guaranteed hereby." Lambert Guaranty Agreement at 2. The Court reserves ruling on BCFR Partners' demand for attorney fees. Furthermore, the precise amount due to BCFR Partners—principal, interest, collection costs, and anything else Defendant Lambert allegedly owes—will be determined in a future order by this Court, if necessary.